Filed 6/1/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JERAD MARSHALL POTTS,<br><br>Defendant and Appellant. | C076318<br><br>(Super. Ct. No. CM039633) |

APPEAL from a judgment of the Superior Court of Butte County, Kristen A. Lucena, Judge.  Affirmed.

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Julie A. Hokans and Catherine Chatman, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

After a jury trial, defendant Jerad Marshall Potts was convicted of, inter alia, escape from his home detention program (Pen. Code, § 4532, subd. (b)(1)[1]). Thereafter, he was sentenced to an eight-month term on the escape conviction as part of an aggregate term of four years eight months, which included a sentence on another case. On appeal, defendant challenges the escape conviction arguing the trial court erred in refusing to instruct the jury that his escape conviction required the willful failure to return to his place of confinement no later than the period he was authorized to be away.

We conclude that any instructional error was harmless. In so concluding, we observe that one source specifying the scope of a prisoner's authority to be away from home and the period of time by which a prisoner must return home from an approved activity is the contract prisoners must sign upon entering a home detention program. The provisions of the agreements defendant signed included requirements that he "immediately" go "directly" home if he left work early. These provisions coupled with his conduct of driving in a direction away from his home and thereafter fleeing the scene of a traffic collision in which he was involved, established that defendant willfully failed to return home within the period he was authorized to be away from home. This is so even though before he was arrested for driving under the influence and hit and run, defendant still had time to get home before the expiration of the normal time he had been authorized to be away. Thus, defendant's assertion that his failure to return was not willful because he was authorized to be away from home until the deadline for returning home at the end of a normal workday is unavailing, because the "immediately" and "directly" provisions of the agreements described the relevant authorized period of time to return home, not the normal workday deadline. Consequently, any error in failing to

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offense.

instruct as defendant requested was harmless because the evidence showed that defendant willfully failed to return home before the expiration of the authorized time period.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was serving a three-year sentence under the "Butte County Sheriff's Office Alternative Custody Supervision" (ACS) program when the events underlying the escape charge took place. The program, authorized by section 1203.016, allowed him to live in an apartment and leave home for approved activities. He was permitted to go to his landscaping job, which included traveling to different job sites.

As required by section 1203.016, subdivision (b), defendant executed a contract acknowledging the program's terms. Deputy James Beller explained the contract to defendant and watched him initial and sign in the appropriate places. Thereafter, Beller supervised defendant in the program.

The terms of the contract included wearing a GPS ankle monitor, obeying the verbal instructions issued by an ACS deputy, not possessing alcohol, not drinking alcohol, and not driving a vehicle with any amount of alcohol in his blood. Paragraphs 39 through 46 of the contract are preceded by the following: "I understand and agree that the following ACS terms and conditions may result in my removal from the ACS program and that I may be charged with felony escape pursuant to [section 4532] and if convicted be sent to state prison." In summary, the pertinent paragraphs in this part of the contract prohibited deviating from his schedule or leaving an authorized location without approval and required him to go *directly* home from work. If defendant could not return directly home, he was to immediately notify a deputy. Also, if he was released from work early, he was to *immediately* return home and notify the program.[2]

---

[2] We set forth the pertinent parts of the contract verbatim. Paragraph 39: "I understand that if . . . I have an unauthorized deviation from my schedule I will be in violation of the

3

In addition to the contract, defendant signed a separate document titled, "Individual Scheduling Instructions for Butte County Alternative Custody Supervision" (individual scheduling instructions). This document also prohibited defendant from deviating from his schedule.[3]

On the day of the incident, defendant was authorized to work from 8:30 a.m. to 5:30 p.m. According to GPS data, defendant was at a landscaping site from 3:00 p.m. to 4:39 p.m. A minute later, he was monitored driving northbound toward his home. But a minute after that, GPS data showed him driving southbound, in a direction away from home.

While still traveling away from his home, defendant crashed the truck he was driving into a car in the middle of an intersection. The collision took place about a mile from defendant's home. After the collision, defendant left the truck and fled to a nearby residence. Five to ten minutes later, an officer found defendant standing in the doorway of a house a quarter mile from the crash. This location was even further away from

conditions of this program and may be subject to felony escape charges as outlined in [s]ection 4532." Paragraph 40: "I understand than any change in my ACS Schedule must be authorized by an ACS Deputy, and that I may be charged with felony escape as outlined in section 4532 . . . if I fail to obtain an ACS Deputies [*sic*] approval to deviate from my schedule." Paragraph 41: "I understand that if I . . . deviate from my approved written schedule I may be charged with felony escape as outlined in section 4532." Paragraph 42: "I understand that if I am away from my approved residence or other approved location without the approval of an ACS Deputy, I . . . may be subject to felony escape charges as outlined in [s]ection 4532." Paragraph 44: "I will go to and *return directly* from . . . my place of employment . . . . If for any reason[] I am delayed and cannot return to my home, I will notify an ACS Deputy at once and await further instructions." Paragraph 45: "If I am released from work . . . earlier than usual . . . , I will *immediately return to my residence* and notify the ACS Staff." (Italics added.)

[3] In pertinent part, the individual scheduling instructions document reads: "I understand that any change in this schedule must be authorized by an ACS deputy. I also understand that if I leave my home without an ACS Deputies' authorization, *deviate from my schedule*, remove my electronic monitor, or fail to charge/power my monitoring equipment, I may be charged with felony escape as outlined in section 4532."

4

defendant's home than the collision scene.  Defendant appeared to have been drinking, and at 5:26 p.m., his blood-alcohol content was 0.22 percent.  Defendant told the arresting officer that he fled the collision scene because he was scared and because he wearing an ankle monitor.

Deputy Beller testified that defendant had not been authorized to go anywhere else before going home that day.  He further testified that defendant departed the physical limits imposed upon him when he deviated from the route home and also when he fled from the collision scene to an unauthorized location.

The trial court instructed the jury on escape using CALCRIM No. 2760, which includes the following as the third element of the crime:  "[T]he defendant escaped from the place of confinement in the home detention program.  [¶]  Escape means the unlawful departure of a prisoner from the physical limits of his or her custody."

Defendant requested, as an additional instruction, a bracketed paragraph from CALCRIM No. 2760, which states:  "[A prisoner also *escapes* if he or she willfully fails to return to his or her place of confinement within the period that he or she was authorized to be away from that place of confinement.  Someone commits an act *willfully* when he or she does it willingly or on purpose.]"

In support of his request, defendant cited *Yost v. Superior Court* (1975) 52 Cal.App.3d 289 (*Yost*), which held that a prisoner had not escaped while on work furlough from the jail when the prisoner failed to report for work and was later arrested on suspicion of robbery in another city before he was due to return to the jail.  (*Id*. at pp. 291-292.)  The robbery charge was dismissed, but the arrest had prevented the prisoner from returning to jail on time.  (*Id*. at p. 292.)  On a writ petition under section

999a,[4] a plurality held that while the prisoner had violated the terms of his furlough, he could not be convicted of escape under section 4532 because the arrest prevented him from willfully failing to return to the jail, and the violation of program conditions did not establish the general criminal intent required for escape. (*Yost*, at p. 293.)

Here, defendant argued that the place of confinement in his home detention program is his home. He further argued that a home detention participant escapes by leaving home without authorization, or by failing to return home by the expiration of the time he is authorized to be away. But escape does not include a participant leaving the home with authorization and doing something other that was he was authorized to do. Thus, according to defendant, he could only be convicted if he left his home without authorization or willfully failed to return home on time.

The trial court denied defendant's requested instruction. The court ruled that *Yost* was not on point because it involved a work furlough program and predated section 1203.016 home detention. Further, defendant's reading of the relevant statutes was too narrow. The trial court reasoned that "the home detention program encompasses a 24-hour, 7-day a week custodial setting.[5]" Within that setting, the statute authorizes prisoners to go to work or attend other specifically authorized activities pursuant to a schedule. Thus, the court ruled that to limit the place of confinement to the home would be inconsistent with the language of the statute. The court added that the CALCRIM

---

[4] Section 999a provides that a defendant may petition for writ of prohibition when the a trial court has denied a section 995 motion to set aside an information on the grounds that the defendant was committed by the magistrate without reasonable or probable cause.

[5] Deputy Beller testified that "[w]hile inmates are on ACS, they're in custody 24 hours a day, seven days a week." He did not testify that this was communicated to defendant or that it was part of the contract or any other document defendant signed. On our review, we do not find any such language in the contract or the individual scheduling instructions.

6

bench notes state that the bracketed language defendant requested is to be given "if appropriate based on the evidence" and further stated, "That's not the People's theory of the case. And the evidence does not support that bracketed section." (See CALCRIM No. 2760.)

In closing argument, the prosecutor told the jury it could find defendant guilty of escape either based on his conduct of driving away from his home "in deviation from his authorized location" or based on his conduct of running away from the scene of the collision to someone else's house "without authorization."[6] The prosecutor pointed to the contract and individual scheduling instructions as the source of defendant's home detention authorization. The prosecutor also argued the requirement that defendant escape from his place of confinement did not necessarily mean that he "escaped from his home, but escaped from his home detention program. So as long as he's within the requirements of his home detention program, there's no problem at all. But once he deviates from that home detention program, that's where [defendant] had violated that element of [the] crime. [¶] And it simply defines -- escape means the unlawful departure of a prisoner from the physical limits of his or her custody. So there [were] specific requirements, and [defendant] violated the terms of those requirements."

Defense counsel argued that defendant did not escape from his place of confinement, as the jury instructions required. His place of confinement was his home; defendant was on what amounted to "house arrest." And the detour was not an escape because at the time defendant veered away from home, he still had plenty of time to get home before the 5:30 p.m. deadline. Defendant was guilty of violating program rules, but not guilty of escape.

---

[6] The trial court gave a unanimity instruction telling the jury it could not find defendant guilty unless it unanimously agreed on at least one of these acts. (See CALCRIM No. 3500.)

In rebuttal, the prosecutor argued that it did not matter how much time defendant had left to get home, because his unauthorized departure satisfied the third element of the escape charge. He reiterated that defendant's physical place of confinement was the "home detention program," which was not limited to defendant's home. Rather, the place of confinement was the places defendant was authorized to go. And defendant departed from the physical limits imposed upon him when he detoured away from his home and fled the collision scene.

The jury convicted defendant of escape (§ 4532, subd. (b)(1) (count 1)); driving under the influence (Veh. Code, § 23152, subd. (a) (count 3)); driving with a blood-alcohol content of 0.08 or higher (Veh. Code, § 23152, subd. (b) (count 4)); and hit-and-run (Veh. Code, § 20002, subd. (a) (count 5)).

## DISCUSSION

Defendant contends the trial court erred in declining to instruct the jury that a conviction for escape requires the willful failure to return to the place of home confinement. According to defendant, "to obtain a conviction for escape, the People were required to prove that [he] had either left his place of home detention (his home) without authorization, or *willfully* failed to return on time to his place of home detention (his home)." Because he was authorized to be away, his prosecution could not be based on an unauthorized departure from his home. Rather, it was based on his willful failure to timely return home. The prosecution was required to prove defendant willfully failed to return home no later than the expiration of the period he was authorized to be away.

Defendant argues that his failure to return was not willful. He was authorized to work from 8:30 a.m. to 5:30 p.m. But for his arrest about a mile from home, sometime between 4:52 p.m. and 4:59 p.m., he could have returned home before 5:30 p.m. Like the furloughed prisoner in *Yost*, his arrest precluded a willful failure to return to his place of confinement on time.

8

Assuming defendant is correct that his place of confinement was limited to his home and that the trial court erred in not giving the bracketed paragraph from CALCRIM No. 2760, the error was harmless. Defendant was "authorized" to be in one of three places at the time he was arrested -- at work, on a direct route home from work, or at home. Whenever he left work at the end of his workday he was to "return directly" home and if work ended early, he was to "immediately return to [his] residence" and notify a program deputy. (See fn. 2, *ante*.) Defendant was not authorized to go or be anywhere else after leaving work. Thus, the 5:30 p.m. deadline applicable to the normal workday was not the relevant time period. The period he was authorized to be away from home after leaving work early encompassed only the time it would have taken to immediately drive directly home. Because the evidence shows beyond a reasonable doubt that defendant willfully failed to return home within that time period, any error in failing to instruct on this requirement was harmless.

## A. Applicable Law

Section 4532, subdivision (b)(1), provides in pertinent part: "Every prisoner . . . [who] is a participant in a home detention program pursuant to Section 1203.016 . . . who escapes or attempts to escape . . . from the place of confinement in a home detention program pursuant to Section 1203.016, is guilty of a felony."[7]

---

[7] Section 4532, subdivision (b)(1), includes many varieties of escape. (*People v. Lopez* (1971) 6 Cal.3d 45, 50-51.) In full, subdivision (b)(1) of section 4532 provides: "Every prisoner arrested and booked for, charged with, or convicted of a felony, and every person committed by order of the juvenile court, who is confined in any county or city jail, prison, industrial farm, or industrial road camp, is engaged on any county road or other county work, is in the lawful custody of any officer or person, or is confined pursuant to Section 4011.9, is a participant in a home detention program pursuant to Section 1203.016, 1203.017, or 1203.018 who *escapes or attempts to escape* from a county or city jail, prison, industrial farm, or industrial road camp or from the custody of the officer or person in charge of him or her while engaged in or going to or returning from the county work or from the custody of any officer or person in whose lawful

9

Subdivision (e) of section 4532 provides a definition of escape from the "place of confinement," applicable in the context of cases like the one before us. It states in pertinent part: "The willful failure of a prisoner . . . to return to his or her place of confinement *no later than the expiration of the period that he or she was authorized* to be away from that place of confinement, is an escape from that place of confinement."[8] (Italics added.)

Additionally, section 1203.016, subdivision (f), the statute authorizing the home detention program defendant participated in, provides: "The correctional administrator may permit home detention program participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance. Willful failure of the program participant to return to the place of home detention *not later than the expiration of any period of time during which he or she is authorized to be away* from the place of home detention pursuant to this section and unauthorized departures from the place of home

---

custody he or she is, or from confinement pursuant to Section 4011.9, or *from the place of confinement in a home detention program pursuant to Section 1203.016*, is guilty of a felony and, if the escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for 16 months, two years, or three years, to be served consecutively, or in a county jail not exceeding one year." (§ 4532, subd. (b)(1), italics added.)

[8] Section 4532, subdivision (e), provides in pertinent part that: "The willful failure of a prisoner, whether convicted of a felony or a misdemeanor, to return to his or her place of confinement *no later than the expiration of the period that he or she was authorized to be away* from that place of confinement, is an escape from that place of confinement. This subdivision applies to a prisoner who is employed or continuing in his or her regular educational program, authorized to secure employment or education pursuant to the Cobey Work Furlough Law (Section 1208), authorized for temporary release for family emergencies or for purposes preparatory to his or her return to the community pursuant to Section 4018.6, or permitted to participate in a home detention program pursuant to Section 1203.016, 1203.017, or 1203.018." (Italics added.)

detention are punishable as provided in Section 4532." (§ 1203.016, subd. (f), italics added.)

Thus under section 4532, the prosecution can prove escape from a home detention program based on a failure to return home after work, if it can prove that the defendant: (1) failed to return home no later than the expiration of the period he or she was authorized to be away; and (2) that failure was willful. As we will explain, one source of authorization indicating the period for which a prisoner may be away from home is the contract the prisoner signs upon entering the program.

## B. Analysis

In addressing defendant's instructional error claim, we will assume without deciding that defendant is correct that the "place of confinement" and "place of home detention" is his home.[9] We consider whether his conduct constituted a willful failure to return to the place of confinement such that the failure to instruct on that theory is harmless.[10]

---

[9] We do note, however, that section 1203.061, subdivision (f), speaks to failing to timely return to "the place of home detention," and section 4532, subdivision (e), speaks to returning to the "place of confinement" within the authorized period of time "to be away from *that* place of confinement." (Italics added.)

[10] The information generically charged defendant with escape under section 4532, subdivision (b)(1), alleging that defendant, "did, while being a person described in section 4532[, subdivision] (b)(1), attempt to escape and escape." The information did not mention subdivision (e) of section 4532 or section 1203.016, subdivision (f). Nor did the information specifically allege the failure to return theory set forth in those provisions. We requested supplemental briefing on whether the willful failure to return theory (as reflected in §§ 4532, subd. (e), & 1203.016, subd. (f)) must be separately charged. The parties agreed that the willful failure to return theory need not be separately charged. As the People point out, the prosecution's theory need not be charged or expressly stated in the charging document when notice has been provided to the defendant by way of the preliminary hearing evidence. (*People v. Kelly* (2007) 42 Cal.4th 763, 791 [generally, a defendant will receive adequate notice of the prosecution's theory of the case from the testimony presented at the preliminary hearing or at the

11

Defendant argues that the failure to give the bracketed instruction he requested amounted to a failure to instruct on willfulness, a necessary element of the offense. According to defendant, because the trial court failed to instruct on a necessary element, the *Chapman* beyond a reasonable doubt harmless error standard applies. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].) The People disagree, asserting that willfulness was a necessary element only if the prosecution relied on the failure to return theory, and accordingly the *Watson* standard applies. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We need not resolve this dispute, because we conclude any error here was harmless under either standard.

Defendant contends his failure to return was not willful because his arrest prevented him from getting home. Defendant's entire argument is grounded on the notion that he was authorized to be away from home until 5:30 p.m., the end of the normal workday. For this reason, his argument fails.

In determining the scope of prisoner's authorization, we look to what the prisoner was told he could do, could not do and must do as a program participant. The contract and the individual scheduling instructions document defendant signed are relevant sources of authorization here. The terms of defendant's home detention in the contract told him to drive "directly" home from work. If released from work early, as he was on the day of the incident, he was required to "immediately return" home and notify home detention staff. (See fn. 2, *ante*.) Those requirements defined the period defendant was authorized to be away from home when his workday ended early. Thus, the authorized period was whatever time it would take to immediately drive directly home. By deviating from a direct route after he left work and driving in the opposite direction from

indictment proceedings].) The People did not argue in their briefing that an instruction related to a prosecution theory not advanced by the prosecution need not be given and we do not address that issue here. The People argued that any error related to the failure to give the instruction on the failure to return theory was harmless.

12

his home, defendant exceeded the period he was authorized to be away from home. Similarly, defendant's flight from the accident scene to a location even further away from his home added time beyond the authorized time period. Because the detour and subsequent flight were willful, defendant willfully failed to return to his place of confinement before the expiration of the period he was authorized to be away. (See § 7, subd. (1) [" 'willfully' " implies simply a purpose or willingness to commit the act. It does not require intent to violate law].)[11]

*Yost, supra*, 52 Cal.App.3d 289 does not help defendant. In *Yost*, the defendant participated in a work furlough program allowing him to leave the jail for work and return thereafter. His hours of work were from 3:30 p.m. to midnight, and he was to be back at the jail by 12:45 a.m. (*Id.* at p. 291.) Other than a condition prohibiting the defendant from riding in automobiles, the opinion tells us nothing else about the restrictions and requirements of the defendant's furlough.

On the night in question, the defendant in *Yost* did not go to work when he left the jail. At 8:30 p.m., he was arrested on suspicion of robbery in another city. Because of the arrest, he was unable to return to the jail by the 12:45 a.m. deadline. (*Yost*, *supra*, 52 Cal.App.3d at pp. 291-292.) Similar to the current section 1203.016, subdivision (f), section 1208, subdivision (h), pertaining to work furlough provided that the willful failure of the prisoner to " 'return to the place of confinement not later than the expiration of any period during which he is authorized to be away from the place of confinement' " could be punishable as an escape under section 4532. (*Yost*, at p. 292.) A plurality concluded that because of the arrest, the defendant did not willfully fail to return on time to the jail. (*Ibid.*) Defendant had several hours to return to his place of confinement. (*Id.* at p. 293.)

---

[11] Defendant cannot credibly argue that he did not willfully drive in a direction away from his home or willfully leave the scene of the collision and go to some other residence; nor does he try.

He "had time to change his mind and to repent." (*Id.* at p. 294.) The *Yost* plurality further held that the evidence of defendant's departure from his work schedule and being in an unauthorized locality in an unauthorized means of transportation did not establish willfulness. (*Id.* at pp. 292-293, 295.)

Here, however, the relevant deadline was not the end of defendant's normal workday. By the time defendant was arrested, the period he was authorized to be away had already expired because his authorized period was the amount of time it took to go immediately and directly home. Unlike the defendant in *Yost*, who was required to return to jail by a set time, once defendant detoured from the direct route home and drove in the opposite direction he exceeded his authorized time period for returning home.

Also, unlike *Yost*, defendant's conduct demonstrated willfulness. His detour was clearly willful within the legal meaning of that term. So too was his flight from the collision scene to a location even further away from his home. His explanation for fleeing the scene was that he was scared and because he was on GPS monitoring. The evidence overwhelmingly shows defendant willfully failed to return home before the expiration of his authorized time to be away from home.

For these reasons, any error relating to the trial court's refusal to give the failure to return instruction was harmless under any standard.

## DISPOSITION

The judgment is affirmed.

                                          MURRAY           , J.

We concur:

      HULL      , Acting P. J.

      RENNER    , J.